**IN RE: Richard L. WOLFE Helen E. Wolfe, Debtors.**

**Case No. 14–54523**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Filed June 19, 2015

James A. Coutinho, Allen Kuehnle Stovall & Neuman LLP, Katherine Barrett Brewer, W. Mark Jump, Columbus, OH, for Debtor.

## ORDER REGARDING MOTION FOR RELIEF FROM STAY (DOC. NO. 28)

CHARLES M. CALDWELL, Judge

The Bank of New York Mellon ("Movant") requests modification of the stay to allow confirmation of the foreclosure sale of property occupied by Richard L. and Helen E. Wolf ("Debtors"). Movant asserts standing to pursue stay relief for cause under Section 362(d)(1) of the United States Bankruptcy Code ("Code"). The property is a single-family residence located at 955 Rock Mill Road, N.W., Lancaster, Ohio 43130, comprised of 1.24 acres. According to an appraisal performed on August 12, 2014, the approximately eight-year-old home is valued at $191,000.00.

The Debtors state that they found the home abandoned, and have resided there since November 2007, premised upon two duly recorded quitclaim deeds. For the last eight years, Debtors assert they made improvements to and paid taxes and maintained insurance coverage for the home. On the other hand, Movant has tried since July 20, 2010, to obtain possession of the home, and the parties have been engaged in litigation in Ohio trial and appellate courts and Federal district court. To date, the parties have not presented any evidence to the Court, and the only bases for this Order is a review of prior pending litigation in Ohio courts, along with pleadings filed in our Court.

This is not the typical case where a creditor holds a recorded mortgage on property purchased by and titled to debtors prior to the bankruptcy filing. Instead, according to the pleadings, the original deeds and Movant's alleged mortgage, dating back to October 2006, were never recorded, and indeed are now lost. As noted above, the Debtors' interest in the property comes from two quitclaim deeds that are duly recorded. The parties litigated the efficacy of the deeds in Ohio trial and appellate courts, leading to the imposition of an "equitable lien" of $186,400.00 in Movant's favor, and a finding that Debtors have no legal or equitable interest under Ohio law to impede foreclosure. How or why the Debtors lived in the home for nearly three years sans Movant's formal intervention, or how the original deeds and mortgage never graced the public record and went missing, all remain a mystery.

Mystery turns to mayhem, now that Movant does not even believe itself to be a "creditor" of this estate on one hand, while with the other it seeks relief from the very stay it has no obligation to respect, as an alleged "non-creditor". Movant calls the Debtors "squatters", and asserts that, on the dual bases of *res judicata* and the Rooker–Feldman doctrine, prior rulings of Ohio courts must control the disposition of what the Debtors now call "home".

Bold, bordering on brazen, but wrong, is the only logical response. For on June 24, 2014, the date the Debtors filed their Chapter 13 petition, the bankruptcy estate emerged. By definition, it included all legal and equitable interests previously held, in addition to property and earnings acquired after filing. 11 U.S.C. § 1306(a). Unless the confirmed plan provides otherwise, debtors retain possession of all estate property. 11 U.S.C. § 1306(b). To Movant's surprise, debtors have "creditors" who hold claims that ". . . arose at the time of or before the order for relief (bankruptcy filing) . . ." 11 U.S.C. § 101(10)(A).

■ Even more revealing, "claims" are defined as a ". . . right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . .". 11 U.S.C. § 101(5)(A).

Without regard to any prior rulings, Movant cannot escape the events that fundamentally altered its status and rights on the day the Debtors filed bankruptcy. For better or worse, it is a creditor. There is more.

On September 30, 2014, the Court confirmed the Debtors' Chapter 13 Plan. Indeed, confirmation occurred after the Movant files and then withdraws its confirmation objection as a "secured creditor herein", all in the span of two months. Movant's withdrawal motion stated no basis. We must remember that for all Chapter 13 debtors with homes, the challenge is to confirm and fund a plan that cures any mortgage arrearage over a reasonable period while maintaining on a current basis contractually due post-petition mortgage payments. The reward, however, is great because confirmation binds both debtors and creditors to the terms of the confirmed plan. 11 U.S.C. § 1327(a).

Further, upon confirmation, unless the plan or confirmation order provides otherwise, all property of the estate vests in debtors. 11 U.S.C. § 1327(b). Finally, the property vested ". . . is free and clear of any claim or interest of any creditor provided for by the plan." 11 U.S.C. § 1327(c). In this case, the Debtors can plausibly assert that the property was scheduled and treated in the plan as being lien-free, and by selecting the vesting option, it now belongs to them free of Movant's judicially imposed equitable lien. The unwitting withdrawal of the confirmation objection triggered all these events, and their effect upon Movant's interests in the home.

Upon consideration of the pleadings and statements of Counsel, primarily three issues are in play. The first is to what extent are the parties bound by prior state court rulings. Second, is the question how the bankruptcy filing and plan confirma-tion have altered the rights of the parties. Third, given the information provided during hearings and detailed in pleadings, may this Court find sufficient cause for lifting or modifying the stay, and indeed should it, given the contorted history of this case. The Court will discuss each issue in order.

█ Regarding the binding effect of prior Ohio court decisions, a review of the documents attached to the pleadings lead the Court to find and conclude that those prior determinations bind both Movant and the Debtors. Specifically, the parties have been in litigation since a July 20, 2010, declaratory judgement action filed in the Fairfield County, Ohio Court of Common Pleas. That litigation essentially resulted in two findings.

The first finding is that the Movant is entitled to an $186,400.00 "equitable lien" on the home, under the terms and conditions of an unrecorded and lost mortgage, dated October 26, 2006. The second finding is that before the bankruptcy filing and under Ohio law, the Debtors had no legal or equitable interest in the property to impede foreclosure. This latter finding resulted from the assertion that the original transferor (Starkey Family Revocable Living Trust) had no interest at the time of its execution of the first quitclaim deed to the Debtors, on October 25, 2007.

After a second quit claim deed was executed by a William Joseph Casey to the Debtors on March 17, 2011, apparently to address this deficiency, the Court of Common Pleas declined reconsideration of its prior order on May 23, 2011, and was affirmed by Fifth District Court of Appeals on December 22, 2011. Upon entry of a foreclosure judgment on February 7, 2013, Debtors again appealed to no avail. The Fifth District Court of Appeals on October 21, 2013, once more affirmed the

essential findings of the Court of Common Pleas. The Supreme Court of Ohio declined to stay this second appellate ruling on December 24, 2013, and on April 28, 2014, the Court of Common Pleas declined to stay a foreclosure sale set for May 2, 2014. The June 24, 2014, bankruptcy filing by the Debtors prevented confirmation of any foreclosure sale.

Movant correctly notes, however, that only the United States Supreme Court at this point has the capacity to alter the two essential findings of Ohio courts. Namely, that 1) Movant has an equitable lien and 2) that at least prior to the bankruptcy filing, Debtors held no legal or equitable interests that can impede Movant's foreclosure rights. *Kellner v. Fifth Third Bank (In re Durham)*, 493 B.R. 506, 510 (Bankr. S.D.Ohio 2013). The upshot is that Movant survives one storm only to blithely sail into the next.

The Court now turns to the second issue of how the bankruptcy filing and plan confirmation altered the rights of the parties. Note, until now no court had the chance and indeed jurisdiction to consider this point. There is no dispute that prior to this bankruptcy filing, a foreclosure sale of the home was not confirmed, which is required to incontestably transfer the property free of any preexisting interests under Ohio law (ORC §§ 2329.31 and 2329.33).

■ In addition, the Debtors were in the home on the date of filing, and received confirmation of a Chapter 13 plan that provides no payment to the Movant, but audaciously purports to vest the property solely to the Debtors and free of Movant's equitable lien. Further, and by far more reasonable, the Debtors claim payment of taxes and insurance and improvement costs-all ostensibly recoverable expenses under Ohio law (ORC § 5303.08), absent proof of fraud or collusion. These are the interests the Debtors hold subject to Movant's equitable lien established by the Ohio courts.

■ This finding leads to the third question, whether there are sufficient bases to terminate, annul, modify or condition the continuation of the stay. 11 U.S.C. § 362(d)(1)and (2). First, cutting through all the history and complications, there is no dispute that the Movant simply has not received any satisfaction or even one payment towards its equitable lien since established by the Ohio courts nearly five years ago. Absent payment, its interests are not adequately protected (11 U.S.C. § 362(d)(1)).

■ On the other hand, as discussed above, the Debtors have legal and equitable interests ("equity" in stay lift jargon). The interests emanate from their occupancy of the home on the date of the bankruptcy filing, the lack of a prior foreclosure confirmation order and their alleged payment of taxes and insurance, in addition to claimed improvements over the last eight years. These interests are in addition to those formed upon plan confirmation, with vesting provisions (11 U.S.C. § 362(d)(2)(A)). Further, there is no evidence to show that continuing to reside in the home is not "... necessary to an effective reorganization ..." (11 U.S.C. § 362(d)(2)(B)).

■ All this leads to the present quandary of what to do with the muddle, in which both parties come to the table equally victimized by their own action or inaction. For the Debtors' part, they just happened upon an "abandoned" home, obtained not one but two recorded quitclaim deeds, and then live there for eight years without paying a dime to the Movant. Even after multiple rulings addressed their interests, Debtors still file a bankruptcy plan designed to vest the property

in them, without any provision for paying or otherwise addressing Movant's equitable lien.

On the flipside, Movant somehow fails to record the original deeds and mortgage dating back to 2006, and inexplicably loses the documents. To top it off, Movant then waits three years after the Debtors move into the home to file suit in state court. Next, when the Debtors reach the bankruptcy court, Movant strangely files and then withdraws its confirmation objection.

To both parties, addressing before this Court your relative interests up front and prior to confirmation, was the correct path all failed to pursue. As a direct consequence, the Court stitched together the following measures to bring a measure of clarity and most importantly closure.

On these bases, the Court **ORDERS:**

- On or before July 31, 2015, Debtors shall file and serve an itemized and fully documented statement of real estate taxes and insurance premiums paid and improvements made to the home since occupancy. After consideration of timely filed objections, the Court will enter a separate judgment order in favor of the Debtors (ORC § 5303.08). Upon proof of payment, the Movant is granted leave to upload an order lifting the stay to complete fully the foreclosure process. The order shall also provide that no future bankruptcy filings by Debtors shall act as a stay.

- On or before July 31, 2015, and only as an alternative to receiving reimbursement detailed in the preceding paragraph, the Court grants the Debtors leave to file only one amended plan, premised upon and accompanied by a signed loan commitment to finance the home at the bankruptcy appraisal value of $191,000.00. In the event the Debtors make this election, the stay will continue in place until the Court rules on the one modification they have been granted leave to file, and any timely filed objections. In the event the one modification is not approved in accordance with this election, Movant is granted leave to upload an order lifting the stay to complete fully the foreclosure process. The order shall also provide that no future bankruptcy filings by Debtors shall act as a stay.

- In the event that the Debtors fail on or before July 31, 2015, to elect either course detailed above, the Movant is granted leave to upload an order lifting the stay to complete fully the foreclosure process. The order shall also provide that no future bankruptcy filings by Debtors shall act as a stay.

**IT IS SO ORDERED.**